27804. DENBY v. BROWN et al.

PER CURIAM. Appellant brought an action below against the City of Tifton and certain of its officials seeking to require the city to permit him to connect his own sanitary sewer line running from his proposed apartment buildings, to be constructed on land located just outside the corporate limits of the city, to the city's sanitary sewer disposal system.

The complaint alleged that the city permitted other residences and businesses located outside the corporate limits of the city to connect with and use the city's disposal system; that the city had legal authority under its charter (Ga. L. 1939, p. 1362) to construct sewage disposal plants and sewage disposal lines outside of the corporate limits of the city to provide such service; and that the city had in fact constructed two such disposal plants and sanitary sewage lines connecting thereto outside of the corporate limits.

The complaint further alleged that the city had denied appellant the right to connect to and use the sewage disposal system, and that such denial was, under the circumstances, a violation of due process of law and equal protection of the law under specified provisions of the Georgia Constitution and the Constitution of the United States.

The appellees filed responsive pleadings and among them was a motion to dismiss the complaint for failure to state a claim. After a hearing the trial court granted

this motion and entered judgment dismissing the appellant's complaint. The appeal here is from that judgment.

Section 4 of the 1939 Act, p. 1362, authorizing the Tifton Sewerage and Water Works System provides: "Be it further enacted that the City is authorized, through its proper officers to contract with persons, firms and corporations, both within and without the city limits for the furnishing by the city service for the disposal of sewage and industrial waste as well as of its water supply, and such contracts may fix the amounts to be charged by the city for such services." Under Section 4 the City of Tifton is authorized but not required to furnish sewage service to persons outside the city limits. Whether to serve such persons is discretionary and not subject to mandamus, no gross abuse of discretion being shown.

Section 2 of the 1939 Act merely authorizes the city to construct, maintain and operate a sewage disposal plant outside the incorporated limits of said city which "plant may be sufficient to meet the needs of the inhabitants of said city and any reasonable future need and also to meet the need for persons, firms or corporations outside of said city within a reasonable distance thereof." This section is concerned with the construction and operation of any sewage plant which may be located outside the city limits and does not control whom the city may serve. The provisions of Section 4 of the Act quoted above control contract service. *City of Moultrie v. Burgess,* 212 Ga. 22 (90 SE2d 1).

The judgment of the trial court dismissing the complaint was correct.

*Judgment affirmed. All the Justices concur, except Hawes and Gunter, JJ., who dissent.*

ARGUED MARCH 12, 1973 — DECIDED JUNE 26, 1973 — REHEARING DENIED JULY 12, 1973.

*Kelley & Allen, Roy Benton Allen,* for appellant.

*Seymour S. Owens,* for appellees.

GUNTER, Justice, dissenting. I am of the opinion that the arbitrary denial of sewage service by the City of Tifton to the appellant in this case was a denial of equal protection of the law as spelled out in both the Georgia and the United States Constitutions. I think that the judgment of the trial court dismissing the appellant's complaint was erroneous.

The 1939 Amendment to the Charter of the City of Tifton authorized the city to construct and operate a sewage disposal system both within and without the corporate limits of the city "to meet the needs of persons, firms or corporations outside of the said city within a reasonable distance thereof, it being hereby declared to be essential to the health and general welfare of the inhabitants of the said city to provide an efficient sewerage disposal plant and water works system to service the needs of persons both within and without the said city."

By virtue of this charter provision and the declaration of public policy contained therein, I conclude that the city cannot arbitrarily deny use of its sewage disposal system to a party located outside the corporate limits but within the "service area" of the municipal utility. If there is to be a denial of service by a municipal utility to a party within its "service area," then such denial must be based on substantial and justifiable reasons. And whether the reasons for denial of service by a municipal utility to a party within its "service area" are justifiable and substantial is a question of fact which cannot be determined on a motion to dismiss the complaint for failure to state a claim.

I do not believe that it can be successfully argued that the City of Tifton can arbitrarily deny sewer service to the owner of property located within its corporate limits. A municipal utility providing service for its citizens

cannot arbitrarily deny such service to one of its citizens.

On the basis of the same logic a municipal government that operates a municipal utility outside of its corporate limits cannot arbitrarily deny service to an applicant in the area where the municipal utility is operated. A municipal utility cannot require a potential customer to accept its services, except for public health reasons (see *City of Midway v. Midway Nursing &c. Center,* 230 Ga. 77 (195 SE2d 452) (1973)); but on the other hand, a municipal utility cannot arbitrarily deny its service to an eligible applicant for such service.

In 1939 the General Assembly of Georgia authorized the City of Tifton to operate a sewage disposal system outside of its corporate limits; it authorized the city to contract with persons located outside the corporate limits for the furnishing of this service; and it gave the city the power of eminent domain outside of its corporate limits for the purpose of constructing and operating this municipal utility. Ga. L. 1939, p. 1362.

The "service area" of this municipal utility is therefore not confined to the corporate limits of the City of Tifton. I would hold that this municipal utility cannot arbitrarily deny service to anyone located within its "service area" because an arbitrary denial of service by the city to any person within its service area does not comport with that provision of the Georgia Constitution (Code Ann. § 2-102), and its equivalent in the Federal Constitution, which provides: "Protection to person and property is the paramount duty of government, and shall be impartial and complete."

I do not think that the case of *City of Moultrie v. Burgess,* 212 Ga. 22 (90 SE2d 1) (1955), relied on by the majority, controls the equal protection issue raised in the present case. The only equal protection issue contained in the *City of Moultrie v. Burgess* case was the contention that the city's ordinances which fixed different water rates for those who resided outside of its corporate limits

offended the Fourteenth Amendment to the Federal Constitution and the Equal Protection Clause of the Georgia Constitution. It is clear to me that the Equal Protection Clauses of both Constitutions permit a municipal utility to classify customer groups with respect to utility rates applicable to such classified customer groups. And as long as such classifications are reasonable and there are economic or operational justifications for applying different rates to different classes of customers, then the constitutional equal protection mandate is not offended.

The complaint in the present case alleged that the appellant's property was within the service area of the municipal utility, that the municipal utility provided sewer service to other customers located in its service area outside of the municipal corporate limits, and that the municipal utility had arbitrarily denied service to the appellant.

The complaint further specifically alleged that the denial of such service arbitrarily was a denial of equal protection of the law under both Constitutions.

I think the complaint stated a claim, and the complaint should not have been dismissed by the trial court.

I would reverse the judgment.

I respectfully dissent.